**Jed R. Schlacter, Esq. (JRS-4874)**
**Bret I. Herman, Esq. (BIH-7148)**
**SCHLACTER & ASSOCIATES**
***Attorneys for Plaintiff***
**450 Seventh Avenue, Suite 1308**
**New York, NY 10123**
**212-695-2000**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**-----------------------------------------------------------------------X**

**EVERLAST WORLD'S BOXING HEADQUARTERS CORP.,**

**Plaintiff,**

**-against-**

**TRIDENT BRANDS INC., SPORTS NUTRITION PRODUCTS INC., and MANCHESTER CAPITAL INC.,**

**Defendants.**

**-----------------------------------------------------------------------X**

**19 Civ.**

**COMPLAINT**

Plaintiff, Everlast World's Boxing Headquarters Corporation, by its attorneys, Schlacter & Associates, as and for its Complaint against defendants Trident Brands Inc., Sports Nutrition Products Inc., and Manchester Capital Inc., alleges as follows:

## JURISDICTION AND VENUE

1. This action, as more fully stated below, is for breach of contract, account stated and breach of guarantee.

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. Section 1332(a)(1) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and is between citizens of different States.

3. The Defendants have agreed that the claims herein shall be brought exclusively in the federal or state courts located in New York County, New York, and have further agreed to be subject to the exclusive jurisdiction and venue of such courts in connection with such claims, pursuant to the following forum selection clause contained in the License Agreement, Assignment Agreement, and Guarantee, at issue herein:

> "This Agreement shall be interpreted and construed in accordance with laws of the State of New York without regard to its choice of law principles. The Parties agree that any dispute or claim arising out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims), shall be brought exclusively in the federal or state courts located in New York County, New York and the Parties for this purpose hereby submit to the exclusive jurisdiction and venue of such courts."

4. Venue is therefore proper in this district under 28 U.S.C. Section 1391(a). Process properly issues from this Court pursuant to Rule 4 of the Federal Rules of Civil Procedure.

**THE PARTIES**

5. Plaintiff, Everlast World's Boxing Headquarters Corporation (hereinafter "Everlast"), is a Delaware corporation, with offices located at 42 West 39th Street, New York, New York 10018.

6. Defendant, Trident Brands Inc. (hereinafter "Trident"), is, upon information and belief, a Nevada corporation, with offices located at 200 South Executive Drive, Suite 101, Brookfield, Wisconsin 53005.

7. Defendant, Sports Nutrition Products Inc. (hereinafter "SNPI"), is, upon information and belief, a Nevada corporation, with offices located at 1170 Invicta Drive, Oakville, Ontario, Canada, L6H 6G1.

8. Defendant, Manchester Capital Inc. (hereinafter "Manchester Capital"), is, upon information and belief, a Canadian corporation, a boutique merchant bank, with offices at 16-1375 Southdown Road, Suite 250, Mississauga, Ontario, Canada L5J 2Z1.

## THE LICENSE AGREEMENT AND GUARANTEE

9. On or about June 4, 2013, Everlast, as Licensor, executed a License Agreement (hereinafter the "License Agreement") with Sports Nutrition Products, Inc.[1], defined as "Licensee", and Manchester Capital, defined as "Guarantor" (for the performance of Licensee's obligations under the License Agreement), whereby Sports Nutrition Products, Inc. licensed from Everlast the right to use certain specified trademarks (the "Trademarks") on specified Licensed Products (the "Licensed Products"). A copy of the License Agreement is annexed hereto as ***Exhibit 1***.

10. Annexed to the License Agreement as Schedule 7 is a Guarantee, duly executed by Manchester Capital and dated May 17, 2013 (the "Guarantee"), in which Manchester Capital:

> "guarantees that Licensee shall perform all of its obligations and duties under the License Agreement. If Licensee defaults in the payment when due of any amount it is obliged to pay Licensor and/or IBML under the License Agreement, or arising from its termination, and has not made such payment within thirty (30) days of receipt of written notice from Licensor and/or IBML, Guarantor shall, immediately on demand by Licensor and/or IBML, unconditionally pay that

[1] This entity is, upon information and belief, a New York corporation, and not a party to this action. The co-defendant in this action, which apparently has the same name, Sports Nutrition Products Inc., is, upon information and belief, a Nevada corporation. See paragraph 7 herein.

amount to Licensor and/or IBML in the manner prescribed in the License Agreement as if it were the Licensee."

11. Hence, Defendant, Manchester Capital, unconditionally guaranteed Trident's obligations and duties under the License Agreement, including all monies due to Everlast.

12. On or about December 23, 2013, with the consent of both Everlast (the Licensor) and Manchester Capital (the Guarantor), the Licensee of the License Agreement, Sports Nutrition Products, Inc., assigned all of its rights and obligations under the License Agreement to Trident, through an assignment agreement dated December 23, 2013 (the "Assignment Agreement"). The Assignment Agreement was duly executed by the Licensee (as "Assignor"), Everlast (as "Licensor"), Trident (as "Assignee"), and Manchester Capital (as "Guarantor"). A copy of the Assignment Agreement is annexed hereto as ***Exhibit 2***.

13. Pursuant to the terms of the Assignment Agreement, Trident assumed all rights and obligations of the Licensee of the License Agreement, and agreed to perform all of the Licensee's obligations under the License Agreement through its wholly-owned subsidiary, Sports Nutrition Products Inc. ("SNPI", a co-defendant herein).

14. The License Agreement was to continue through December 31, 2027 (subject to earlier termination as provided therein), with either the Licensor or Licensee having the right to terminate the License Agreement effective as of December 31, 2017 (by giving a required prior written notice).

15. By letter dated May 9, 2017, Everlast, through its agent International Brand Management Limited ("IBML"), provided written notice to defendants of, *inter alia*, their breach of the License Agreement, with demand for payment of the monies due.

16. On June 28, 2017 the plaintiff and defendants entered into a First Supplemental Deed in Respect of a Trademark License Agreement (hereinafter referred to as the "First Amendment", a copy of which is annexed hereto as ***Exhibit 3***).

17. The First Amendment contained, *inter alia*, the following provisions:

> "1.1 Clause 4.2 of the Licence Agreement is hereby deleted and replaced with the following:
>
> 'Either Party shall be entitled to terminate this Agreement without liability to the other Party, effective on 31 December 2017, by giving written notice to the other Party, no later than by 31 July 2017.'
>
> 1.2 In all other respects the Licence Agreement shall remain in full force and effect."

18. By written letter dated July 31, 2017, defendant Trident sought, *inter alia*, to extend the date set forth in Section 4.2 of the First Amendment, by which it was required to provide written notice of termination of the License. Said letter further stated: "If you are unable to provide the additional extension as of the date of this letter, Trident is providing its notice of termination under clause 4.2 effective December 31, 2017."

19. In response to the letter dated July 31, 2017, IBML wrote to defendants by letter dated August 3, 2017 enclosing a proposed draft second supplemental deed (the "Second Amendment"), and advising, *inter alia*, that it was willing to extend the date to provide notice of termination in Section 4.2 to September 30, 2017 if, among other things, the proposed Second Amendment was duly executed. The letter by IBML also stated, *inter alia*, as follows:

> "Please note that all discussions with regards to amendments to the terms and obligations of the Agreement remain subject to contract and non-binding until such date as the amendments are agreed in writing and signed by the parties to the Agreement in accordance with Clause 26.4.

Please now arrange to make payment of all outstanding royalty invoices due under the Agreement."

20. As no Second Amendment was agreed to, the License Agreement was effectively terminated as of December 31, 2017.

21. Pursuant to the License Agreement, upon termination of the License Agreement as of December 31, 2017, all sums due to Everlast under the License Agreement as of the date of termination, were payable immediately upon such termination. Paragraph 6.5 of the License Agreement states: "Immediately upon the termination of this Agreement for whatever reason (and without prejudice to any other rights or remedies available to Licensor under this Agreement or otherwise) all sums due to Licensor shall become payable immediately."

22. In addition, pursuant to paragraph 17.6 of the License Agreement, the termination of the License Agreement "shall not affect any of the Parties' accrued rights or liabilities."

23. The License Agreement provides, *inter alia*, for Annual Guaranteed Minimum Royalties of the following sums, for the years 2014 through 2017:

| | |
|---|---|
| 2014 | $ 120,000.00 |
| 2015 | $ 235,000.00 |
| 2016 | $ 320,000.00 |
| 2017 | $ 345,000.00 |

24. The License Agreement states that Licensee shall make royalty payments to Everlast at the end of each Quarter in each year of the License (to be received by Everlast within twenty-five days after the end of each Quarter), and each quarterly royalty payment shall be the

greater of (a) the Royalty Calculation for such Quarter (as defined in the License Agreement) or (b) one quarter of the Annual Guaranteed Minimum Royalty for that year.

25. The License Agreement also provides, *inter alia*, for Licensee to pay to Everlast (also at the end of each Quarter) a sum equal to (a) one percent of 60% of Retail Sales Revenue (as defined in the License Agreement); and (b) one percent of Net Sales (as defined in the License Agreement) for global advertising and promotion ("Global A&P").

**FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANTS TRIDENT BRANDS INC. AND SPORTS NUTRITION PRODUCTS INC.**

26. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 25 above as if fully repeated herein.

27. Defendants have failed to make any payments that were due pursuant to the License Agreement beyond the third Quarter of 2016 – i.e. for the fourth Quarter of 2016 and for each and every Quarter of 2017, thereby materially breaching the License Agreement.

28. Pursuant to the terms of the License Agreement, Defendants owe Everlast the principal sum of $425,555.29 representing Minimum Quarterly Royalties and Global A&P due to Everlast, broken down as follows:

| Quarter | Quarter Royalty | Global A&P |
|---|---|---|
| Q4 2016 | $ 80,000.00 | $ 8.99 |
| Q1 2017 | $ 86,250.00 | $ 5.10 |
| Q2 2017 | $ 86,250.00 | |
| Q3 2017 | $ 86,250.00 | $ 541.20 |
| Q4 2017 | $ 86,250.00 | |
| | $425,000.00 | $ 555.29 |

29. Paragraph 6.4 of the License Agreement states, *inter alia*, that, "If Licensee fails to pay in full any sums due to Licensor under this Agreement on the due date for payment, then without prejudice to any other right or remedy which may be available to Licensor under this Agreement or otherwise, Licensor shall be entitled to… charge interest at the rate of one and one-half percent (1.5%) per month commencing fifteen (15) days after the same shall fall due."

30. Paragraph 6.4 of the License Agreement also states, *inter alia*, that, "If Licensee fails to pay in full any sums due to Licensor under this Agreement on the due date for payment, then without prejudice to any other right or remedy which may be available to Licensor under this Agreement or otherwise, Licensor shall be entitled to… recover from Licensee any and all reasonable and properly incurred costs and expenses (including legal fees) incurred by Licensor in collecting the amount unpaid."

31. Subsequent to December 31, 2017, Everlast, through its agent IBML, made repeated, unsuccessful, demands to Defendants for payment of the monies due and owing.

32. By letter dated November 9, 2018, Everlast again made demand upon Defendants for payment of the monies due, specifying (a) the amounts of Royalties and Global A&P due to Everlast totaling $425,555.29; (b) plus interest of $96,264.63, as of November 7, 2018, as provided in the License Agreement; and (c) its right to collect from Defendants the costs, expenses and legal fees incurred by Everlast in collecting monies due to Everlast under the License Agreement.

33. Everlast has fulfilled all of its obligations under the License Agreement.

34. As a result of the foregoing, and pursuant to the terms of the License Agreement and Assignment Agreement, Defendants Trident and SNPI owe to Everlast the minimum sum of $521,819.92 as of November 7, 2018, plus additional interest and all costs, expenses and legal fees incurred by Everlast in collecting monies due to Everlast under the License Agreement.

35. As a consequence of the Defendants' wrongdoing, Everlast has therefore sustained damages in a sum to be determined at trial, including interest at the rate set forth in the License plus attorneys' fees, all of which is believed to exceed $522,000.00.

**SECOND CAUSE OF ACTION FOR ACCOUNT STATED AGAINST DEFENDANTS TRIDENT BRANDS INC. AND SPORTS NUTRITION PRODUCTS INC.**

36. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 35 above as if fully repeated herein.

37. From on or around December 31, 2016 through on or around December 31, 2017, Everlast delivered to Trident and SNPI Invoices for the unpaid Royalties and Global A&P as they accrued, as follows:

| Inv. Date | Invoice No. | Invoice Amount | Date Due |
|---|---|---|---|
| 12/31/16 | 1155746 | $ 80,000.00 | 1/25/17 |
| 12/31/16 | 1155786 | $ 8.99 | 1/25/17 |
| 3/31/17 | 1155871 | $ 86,250.00 | 4/25/17 |
| 3/31/17 | 1155902 | $ 5.10 | 4/25/17 |
| 6/30/17 | 1155937 | $ 86,250.00 | 7/25/17 |
| 9/30/17 | 1156061 | $ 86,250.00 | 10/25/17 |
| 9/30/17 | 1156139 | $ 541.20 | 10/25/17 |
| 12/31/17 | 1156212 | $ 86,250.00 | 1/25/18 |

38. Trident and SNPI received and retained the Invoices set forth in paragraph 37 above without objection.

39. As a consequence of the above, an account was stated between Everlast and Trident and SNPI in the total sum of $425,555.29, none of which has been paid, although duly demanded.

40. As a result of the foregoing, Everlast has sustained damages in the sum of $425,555.29, plus interest, costs, disbursements and attorneys' fees, which in total exceed the sum of $522,000.00.

**THIRD CAUSE OF ACTION FOR BREACH OF GUARANTEE AGAINST DEFENDANT MANCHESTER CAPITAL INC.**

41. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 40 above as if fully repeated herein.

42. Defendant, Manchester Capital, unconditionally guaranteed Trident's obligations and duties under the License Agreement, including all monies due to Everlast, by executing the License Agreement, the Guarantee, and the Assignment Agreement.

43. By virtue of its unconditional Guarantee of, *inter alia*, all monies owed by Defendants Trident and SNPI to Everlast, Defendant Manchester owes Everlast a sum to be determined at trial, but believed to be $425,555.29 plus interest as set forth in the License, and attorneys' fees.

44. Plaintiff has provided repeated written notice to, and demand upon, Manchester for payment of the monies due, but Manchester has failed, and refused, to comply.

45. As a result of the foregoing, Everlast has sustained damages in a sum to be determined at trial, including interest at the rate set forth in the License plus attorneys' fees, all of which is believed to exceed $522,000.00.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants as follows:

(a) On its First Cause of Action, a sum to be determined at trial, but believed to exceed the sum of $522,000.00, plus additional interest and attorneys' fees as set forth in the License;

(b) On its Second Cause of Action, a sum to be determined at trial, but believed to exceed the sum of $522,000.00, plus additional interest and attorneys' fees as set forth in the License;

(c) On its Third Cause of Action, a sum to be determined at trial, but believed to exceed the sum of $522,000.00, plus additional interest and attorneys' fees as set forth in the License;

(d) Plus costs, disbursements and such other and further relief as this Court deems just and proper.

Dated: New York, New York
January 16, 2019

SCHLACTER & ASSOCIATES
*Attorneys for Plaintiff*

By: ____________________
Jed R. Schlacter, Esq. (JRS-4874)
450 Seventh Avenue
New York, New York 10123
212-695-2000
jed@schlacterassociates.com