UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
EVERLAST WORLD'S BOXING HEADQUARTERS :
CORP., :
:
Plaintiff, :
:
-v- : 19-CV-503 (JMF)
:
TRIDENT BRANDS INC., SPORTS NUTRITION :
PRODUCTS INC., and MANCHESTER CAPITAL INC., :
:
Defendants. :
:
------------------------------------------------------------------------X
:
TRIDENT BRANDS INC., :
:
Plaintiff, :
: 19-CV-510 (JMF)
-v- :
:
EVERLAST WORLD'S BOXING HEADQUARTERS : OPINION AND ORDER
CORP. and INTERNATIONAL BRAND MANAGEMENT :
LIMITED, :
:
Defendants. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

  These consolidated cases arise from agreements between Everlast World's Boxing Headquarters Corp. ("Everlast") and International Brand Management Ltd. ("IBML"), on the one hand, and Trident Brands Inc. ("Trident") and Manchester Capital Inc. ("Manchester"), on the other, pursuant to which Trident agreed to pay royalties to Everlast and IBML in exchange for a license to use Everlast's trademark on certain fitness-related products and Manchester agreed to

serve as Trident's guarantor.[1]  Not long after entering the relevant agreements, Trident concluded that it had struck a bad deal and sought to renegotiate the royalty provisions of the agreements. When that effort failed to yield a written amendment to the parties' contracts, Trident terminated the principal agreement pursuant to an early termination clause.  Predictably, litigation followed, with Everlast bringing breach of contract claims against Trident, Manchester, and Sports Nutrition Products Inc. ("SNPI-NV"), a wholly owned subsidiary of Trident; and Trident bringing breach of contract and various other claims against Everlast and IBML.

Now pending are three motions.  First, SNPI-NV moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Everlast's contract claim on the ground that SNPI-NV was not a party to the relevant contracts.  Second, Everlast and IBML move, pursuant to Rule 12(b)(6), to dismiss Trident's Complaint in its entirety.  And third, Everlast moves, pursuant to Rule 12(c), for judgment on the pleadings with respect to its breach of contract claim against Trident and Manchester.  For the reasons that follow, all three motions are granted (albeit in the case of Everlast's Rule 12(c) motion as to liability only).

## BACKGROUND

The following facts are undisputed unless otherwise noted.

**A. The License Agreement**

On June 4, 2013, Everlast and IBML entered into a licensing agreement (the "Licensing Agreement") with a New York corporation that is not a party to this litigation, Sports Nutrition Products, Inc. ("SNPI-NY"), and Manchester.  The License Agreement authorized SNPI-NY to use certain Everlast trademarks on fitness-related products.  *See* ECF No. 31 ("Amended Compl."), ¶

---

[1]  Pursuant to the Court's Order consolidating the two cases, *see* 19-CV-503 (JMF), Docket Nos. 21 & 26, the Clerk of Court closed 19-CV-510 (JMF) on May 3, 2019.  To clarify the roles of the parties, however, the Court includes the captions of both cases here.  All record citations are to the docket in 19-CV-503 (JMF) unless otherwise noted.

10; ECF No. 31-1 ("License"), § 2 & Schs. 1-2.  In exchange, SNPI-NY agreed to make quarterly royalty payments, subject to a minimum payment that increased on an annual basis.  *See* Amended Compl. ¶¶ 41-42; Docket No. 19-CV-0510, ECF No. 1-1 ("Trident Compl."), ¶ 10; *see also* License §§ 6.1-6.2, 7.3.  Manchester, meanwhile, agreed to serve as guarantor.  That is, Manchester agreed to pay SNPI-NY's debts upon request in the event that SNPI-NY defaulted on its obligations.  *See* Amended Compl. ¶¶ 11-12; *see also* License Sch. 7.  Section 26.4 of the License Agreement provided that "[n]o amendment or other variation to this Agreement shall be effective unless it is in writing, is dated and is signed by a duly authorized representative of each Party."

By its terms, the License Agreement was to last fourteen and a half years, until December 31, 2027.  *See* License § 4.1.  But the agreement contained an early termination provision, Section 4.2, which stated that "[e]ither Party shall be entitled to terminate this Agreement without liability to the other Party, effective on 31 December 2017, by giving written notice to the other Party, no later than by 30 June 2017."  *Id.* § 4.2.  Other provisions addressed SNPI-NY's obligations in the event of termination.  Section 6.5, for instance, provided: "Immediately upon termination of this Agreement, for whatever reason (and without prejudice to any other rights or remedies available to the Licensor under this Agreement or otherwise) all sums due to Licensor shall become payable immediately."  Section 17.6, in turn, provided that "[t]ermination of this Agreement shall not affect any of the Parties' accrued rights or Liabilities."  And Section 17.7, indicated that specified provisions of the License Agreement, including Sections 6.5 and 17.6, would "remain in full force and effect" after termination.  *Id.* § 17.6 ("The provisions of this Agreement for whatever reason which in order to give effect to their meaning need to survive its termination shall remain in full force and effect thereafter including where applicable [Sections] 1, 6, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 26.").

3

**B. The Assignment to Trident**

The License Agreement prohibited assignment by SNPI-NY absent prior written authorization by Everlast "and/or" IBML. *Id.* § 22.1. On December 23, 2013, however, SNPI-NY assigned all of its rights and obligations under the License Agreement to Trident pursuant to a written agreement (the "Assignment") signed by representatives of Everlast, IBML, SNPI-NY, Manchester, and Trident. *See* Amended Compl. ¶ 13; *see also* ECF No. 31-2 ("Assignment"), § 1.1. Section 1.2 of the Assignment provided as follows:

> The Assignee [Trident] agrees to perform all the Assignor's [SNPI-NY's] obligations under the Contract . . . through its wholly owned subsidiary, Sports Nutrition Products Inc. [SNPI-NV], a Nevada corporation . . . . The Assignee hereby acknowledges and agrees that it shall remain responsible to Licensor [Everlast] and IBML for all acts and omissions of SNPI[-NV] (which shall be deemed to be acts and omissions of the Assignee).

Assignment § 1.2. SNPI-NV, which is a party to this litigation, is mentioned nowhere else in the Assignment. Nor was SNPI-NV a signatory to the Assignment.

At some point, Trident appears to have developed a case of licensor's remorse, and understandably so. According to Trident's Complaint, the company spent approximately $3 million — including royalty payments to Everlast of between $600,000 to $700,000 — in connection with its licensing activities, yet it generated no more than about $100,000 in sales. *See* Trident Compl. ¶¶ 13-14. In the fall of 2016, Trident approached Everlast about changing the royalty structure to more favorable terms. *See id.* ¶ 15. According to Trident, in January 2017, Everlast's Chief Executive Officer and Trident's Chief Executive Officer orally agreed to revise the royalty provisions of the License Agreement once Trident made its outstanding royalty payment for the fourth quarter of 2016. *See id.* But no such agreement was reduced to writing; nor was a written amendment regarding royalties ever adopted. Trident alleges that it completed its royalty payment for the fourth quarter of 2016 in February 2017 and that Everlast refused to honor its alleged promise to "restructure the royalty, with a revised 2017 minimum royalty of $39,000 and a 3%

4

royalty on all sales of licensed products." *Id.* ¶ 16.

**C. Termination and Litigation**

As noted above, the License Agreement provided that "[e]ither Party" was "entitled to terminate" the Agreement, "effective on 31 December 2017, by giving written notice to the other Party, no later than by 30 June 2017." License § 4.2. On June 28, 2017, representatives from Everlast, IBML, Trident, and Manchester (but not SNPI-NV) executed an amendment extending the notice deadline to July 31, 2017. *See* Amended Compl. ¶¶ 33-34; *see also* ECF No. 31-7 ("Amendment"), § 1.1. Trident sought to extend the notice deadline again, but the relevant parties could not reach agreement on the terms of such an extension. On July 31, 2017, therefore, Trident provided written "notice of termination under clause 4.2 effective December 31, 2017." *See* Amended Compl. ¶ 35; *see also* ECF No. 39-6 ("Trident July 31, 2017 Letter"). Thereafter, Everlast sent multiple written demands to Trident and Manchester for royalty payments due, without success. *See* Amended Compl. ¶ 49. By letter dated November 9, 2018, for example, Everlast demanded $425,555.29 from Trident and Manchester for royalties owed between the fourth quarter of 2016 and December 31, 2017. *See* Amended Compl. ¶ 50; *see also* ECF No. 39-4 ("Nov. 9, 2018 IBML Letter"). The letter also demanded interest of $96,264.63 (as of November 7, 2018), as well as costs, expenses, and legal fees incurred by Everlast in pursuing its claims. *See* Amended Compl. ¶ 50; *see also* Nov. 9, 2018 IBML Letter.

Not long after, litigation began, with Trident striking first. On January 11, 2019, Trident sued Everlast and IBML in New York state court, alleging five claims: (1) breach of the purported oral agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud; (4) negligent misrepresentation; and (5) declaratory judgment that Trident is not obligated to make further payments of royalties pursuant to Section 4.2 of the License Agreement. *See* Trident Compl. ¶¶ 21-43. Six days later, Everlast filed suit in this Court against Trident, Manchester, and

SNPI-NV, alleging breach of the License Agreement and seeking more than $575,000 in damages. *See* Amended Compl. ¶¶ 44-63; *see also* ECF No. 1. The same day, IBML and Everlast removed Trident's lawsuit to this Court, *see* Docket No. 19-CV-0510, ECF. No. 1 ("Notice of Removal"), and the two lawsuits were eventually consolidated, *see* ECF No. 21. SNPI-NV's and Everlast's motions followed.

## LEGAL STANDARDS

As noted, the Court is confronted (effectively, at least) with three motions. First, SNPI-NV moves to dismiss Everlast's contract claim against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Second, Everlast and IBML move to dismiss Trident's claims, pursuant to Rule 12(c). And finally, Everlast also moves with respect to its own claims for judgment on the pleadings, also pursuant to Rule 12(c).

Conveniently, a motion for judgment on the pleadings brought pursuant to Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim brought pursuant to Rule 12(b)(6). *See, e.g., Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Thus, in reviewing each motion, the Court must accept all well-pleaded factual allegations in the operative complaint as true and draw all reasonable inferences in favor of the nonmoving party. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019). The Court will not dismiss any claims unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) — that is, a claim that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if a plaintiff has not "nudged [its]

claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

## DISCUSSION

The Court begins with SNPI-NV's motion to dismiss, then turns to Everlast's and IBML's motion to dismiss Trident's claims, and finishes with Everlast's motion for judgment on the pleadings with respect to its own claims against Trident and Manchester.

### A. SNPI-NV's Motion to Dismiss

SNPI-NV's motion to dismiss the sole claim against it — for breach of contract — must be granted. As a general rule, only parties to a contract can be held liable for its breach. *See, e.g.*, *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985); *Crabtree v. Tristar Automotive Group, Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991). Here, it is undisputed that SNPI-NV is not a party to the License Agreement or to the Assignment. And while SNPI-NV is named in one section of the Assignment — to wit, Section 1.2, in which Trident agreed to perform all of its obligations through SNPI-NV, "its wholly owned subsidiary" — that section also makes clear that Trident "remain[ed] responsible" to Everlast "for all acts and omissions of SNPI[-NV] (which shall be deemed to be acts and omissions of the Assignee)." Assignment § 1.2. Far from supporting Everlast's contract claim against SNPI-NV, therefore, that unambiguous provision is fatal to it (and, on top of that, precludes Everlast's efforts to rely on extrinsic evidence in support of its claim that SNPI-NV is liable). *See, e.g.*, *Greenfield v. Philles Records*, 780 N.E.2d 166, 170 (2002) ("A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."); *see also, e.g.*, *Hop Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012) ("Under New York law, . . . [e]xtrinsic evidence cannot be used to vary the terms of a facially unambiguous contract.").

Perhaps recognizing the weakness of a straightforward contract claim against SNPI-NV,

Everlast turns to two other theories in its bid to keep SNPI-NV in this case, but both fall short.[2] First, Everlast invokes the "functional equivalent of privity" doctrine. ECF No. 41 ("Everlast SNPI-NV Mem."), at 5-9; *see, e.g.*, *Ossining Union Free Sch. Dist. v. Anderson*, 73 N.Y.2d 417, 424-25 (1989). As SNPI-NV argues, however, the New York Court of Appeals decision in *Dormitory Authority of New York v. Samson Construction Co.*, 94 N.E.3d 456, 459 (N.Y. 2018), casts some doubt on the continuing validity of the doctrine. *See* ECF No. 43, at 6-7. And assuming *arguendo* that the doctrine is still valid, it is applied only where the relationship between the plaintiff and defendant is "so close as to approach that of privity," such as in cases involving professional negligence claims, *see, e.g.*, *Media Glow Digital, LLC v. Panasonic Corporation of North America*, No. 16-CV-7907 (JFK) (HBP). 2019 WL 2281375, at *4 (S.D.N.Y. May 29, 2019), and construction cases, *see, e.g.*, *Town of Oyster Bay v. Lizza Indus., Inc.*, 4 N.E.3d 944 (N.Y. 2013). In any event, to invoke the doctrine, a party has to demonstrate "(1) awareness that the [work product was] to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance." *Ossining*, 539 N.Y.2d at 425. Here, there is no allegation that Everlast and SNPI-NV dealt with each other directly, let alone had direct dealings that evince SNPI-NV's understanding that Everlast was relying on SNPI-NV for royalty payments. *See, e.g.*, *Stapleton v. Barrett Crane Design & Eng'g*, 725 F. App'x 28, 30-31 (2d Cir. 2018) (summary order) (affirming a finding that there was no functional privity where the

---

[2] Everlast does not appear to argue (and certainly does not argue seriously) that SNPI-NV was an alter ego of Trident or a sham entity whose independent corporate existence must be disregarded, but any such arguments would fail in any event. Put simply, there are no non-conclusory allegations in the Amended Complaint that SNPI-NV directly negotiated the License or Assignment, "micro-manag[ed performance under the contracts], or represent[ed] that it was the actual party thereto." *Centennial Energy Holdings, Inc. v. Colorado Energy Mgmt., LLC*, 32 Misc. 3d 1215(A), 2011 WL 2712961, at *6 (N.Y. Sup. Ct. 2011); *cf. ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 73-74 (S.D.N.Y. 1999).

8

plaintiff did not sufficiently allege direct dealings with nonsignatory); *Houbigant, Inc. v. Deloitte & Touche LLP*, 303 A.D.2d 92, 94(N.Y. App. Div. 2003) (noting that, to satisfy the third prong of New York's functional equivalence of privity test, "there must be some allegation of 'linking conduct' by the [professional], that is, 'any word or action on the part of the [professional] directed to plaintiffs,' so as to 'link' the [professional] to the non-client"). Thus, Everlast's reliance on the functional equivalent of privity doctrine is misplaced.

Everlast's second fallback theory is that it is a third-party beneficiary of some contract between Trident and SNPI-NV. Everlast SNPI-NV Mem. 9-10. To prevail on a claim for breach of contract as a third-party beneficiary under New York law, a plaintiff must establish "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [the plaintiff's] benefit, and (3) that the benefit to [the plaintiff] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [the plaintiff] if the benefit is lost." *Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786 (2006) (internal quotation marks omitted). Moreover, the parties' intention "to benefit the third party must appear from the four corners of the instrument." *Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 263 (S.D.N.Y. 2006) (internal quotation marks omitted). Here, the best Everlast can do is to allege, "[u]pon information and belief," that Trident and SNPI-NV "had an agreement." Amended Compl. ¶ 17. But that does not suffice. The Amended Complaint does not allege the terms of the purported contract, let alone allege that its terms manifested an intent on the part of Trident and SNPI-NV to benefit Everlast. Nor, for that matter, does the Amended Complaint even allege that SNPI-NV breached its hypothetical contract with Trident. Accordingly, Everlast cannot salvage its breach claim against SNPI-NV by invoking the third-party beneficiary theory. Instead, the claim must be and is dismissed.

**B. Everlast's and IBML's Motion to Dismiss Trident's Complaint**

Next, the Court turns to Everlast's and IBML's motion to dismiss Trident's Complaint, which, as noted, brings five claims: (1) breach of the parties' purported oral agreement to "a new, revised royalty structure," Trident Compl. ¶ 22; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud; (4) negligent misrepresentation; and (5) a claim for a declaratory judgment. The Court will consider each of Trident's claims in turn.

1. **Breach of Contract**

There is good reason to doubt that Trident reached an oral agreement with Everlast and IBML to change the royalty structure of the parties' relationship.[3] But even if it did, Trident's claim that Everlast breached that oral agreement fails as a matter of law for one simple reason: The License Agreement provided explicitly that "[n]o amendment or other variation to this Agreement shall be effective unless it is in writing, is dated and is signed by a duly authorized representative of each Party." License § 26.4. Section 15-301(1) of New York General Obligations Law provides that "[a] written agreement . . . which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." Put another way, "if the only proof of an alleged agreement to deviate from a written contract is the oral exchanges between the parties" — as is the case here, *see* Trident Compl. ¶ 15 — "the writing controls. Thus, the authenticity of any amendment is ensured." *Rose v. Spa Realty Assocs.*, 42

---

[3] Among other things, Trident's own letter of July 31, 2017 — seeking an additional one-month extension of the termination notice deadline and, in the absence of such an extension, terminating the License Agreement — makes plain that the parties never actually reached agreement to modify the royalty provisions of the License Agreement. The letter noted Trident's "expectation" that revised royalty terms "as tabled by IBML . . . will be executed"; that Trident had agreed to extend the termination notice deadline to July 31, 2017, to "allow[] IBML more time to work through the matter"; and that an additional one-month extension would provide "sufficient time to formalize a fair and equitable agreement." Trident July 31, 2017 Letter.

N.Y.2d 338, 343 (1977) (citing *DFI Commc'ns v. Greenberg*, 41 N.Y.2d 602, 606-07 (1977)); *accord Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 521-22 (2d Cir. 1990) (holding that Section 15-301 precludes oral modifications and waivers when both are precluded by underlying contract).

There are two narrow exceptions to this rule: (1) where the aggrieved party has partially performed pursuant to the oral agreement's terms; and (2) where the other party has "induced [the aggrieved party's] significant and substantial reliance upon an oral modification" such that it is "estopped from invoking the statute to bar proof of that oral modification." *Rose*, 42 N.Y.2d at 341; *accord United States v. Schwimmer*, 968 F.2d 1570, 1575 (2d Cir. 1992). For either exception to apply, however, the conduct "must not otherwise be compatible with the agreement as written." *Rose*, 42 N.Y.2d at 344. And that is not the case here. Trident alleges that it made its payments for the fourth quarter of 2016 in exchange for Everlast's agreement to the revised royalty structure. *See* Trident Compl. ¶ 16. But that payment was not incompatible with the License Agreement's written terms. Far from it. The License Agreement *required* Trident to make the payment. Thus, the License's "no-oral-modification clause governs," and Trident may not maintain a claim for breach of the parties' purported oral agreement. *Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 519 (S.D.N.Y. 2009) (finding no partial performance or detrimental reliance relating to an alleged oral modification where the plaintiff was already contractually obligated to make the monetary payment in question).

Neither *Rose* nor *National Westminster Bank USA v. Ross*, 676 F. Supp. 48 (S.D.N.Y. 1987), upon which Trident relies, calls for a different conclusion. In *Rose*, the plaintiff land purchasers successfully enforced an oral modification to reduce the amount of land to be conveyed upon showing that the defendant sellers partially performed pursuant to the modification when they sought government approval for only a subset of the units referenced in the original contract. *See*

42 N.Y.2d at 345. The court concluded that the sellers' conduct was "unequivocally referable to the oral agreement to modify," *id.*, and that they were estopped from invoking Section 15-301, because they had acquiesced to the land developers' continued progress and financial investment in the project. Critically, the "sellers actively lulled purchasers into thinking the oral modification had been accepted." *Id.* at 345. In *National Westminster Bank*, meanwhile, the president of a corporation and guarantor of its loans sufficiently pleaded that he had altered his conduct in reliance on the bank's oral promise to increase financing. *See* 676 F. Supp. at 53. Importantly, the court found that the bank's promise to extend credit to the company if the company paid an additional $30,000 fee to the bank and added $100,000 as subordinate capital to the company was "not provided for in any of the written agreements originally signed by the parties, and therefore . . . [was] not compatible with those agreements." *Id.* In stark contrast, the only conduct Trident alleges — its $80,000 royalty payment — was expressly "provided for in . . . the written agreements originally signed by the parties." *Id.*

For these reasons, Trident's contract claim must be and is dismissed.

**2. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Trident's next claim — for breach of the implied covenant of good faith and fair dealing — also fails as a matter of law. "Under New York law, parties to an express contract are bound by an implied duty of good faith." *Apotex Corp. v. Hospira Healthcare India Private Ltd.*, No. 18-CV-4903 (JMF), 2019 WL 3066328, at *6 (S.D.N.Y. July 12, 2019) (internal quotation marks omitted) (citing *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)). But because the implied covenant derives from the contract itself, it "does not create any new contractual rights" or "provide an independent basis for recovery." *Village On Canon v. Bankers Trust Co.*, 920 F.Supp. 520, 534 (S.D.N.Y. 1996). It follows that, absent the existence of a preliminary agreement to negotiate in good faith or some other written agreement establishing such duty, *see, e.g.*, *L-7 Designs, Inc. v.*

12

*Old Navy, LLC*, 647 F.3d 419, 430-32 (2d Cir. 2011), "when an oral agreement is unenforceable, there can be no breach of the implied covenant of good faith and fair dealing," *Thiam v. American Talent Agency, Inc.*, No. 11-CV-1465 (GBD), 2012 WL 1034901, at *6 (S.D.N.Y. Mar. 27, 2012); *see also Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (holding that the determination that no express contract exists disposes of an implied-covenant claim). Here, Trident does not allege that a written preliminary agreement exists, and the oral agreement, as previously discussed, is invalid as a matter of law. Accordingly, the implied-covenant claim must be and is dismissed.[4]

### 3. Fraud and Negligent Misrepresentation

Trident's next two claims — for fraud and negligent misrepresentation — are subject to dismissal as well. Reasonable reliance and injury are essential elements of both claims under New York law. *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009) (fraud); *see also Keywell Corp. v. Weinstein*, 33 F.3d 159, 163 (2d Cir. 1994) (fraud); *Pappas v. Harrow Stores, Inc.*, 528 N.Y.S.2d 404, 407 (2d Dep't 1988) (negligent misrepresentation). Conclusory assertions aside, *see, e.g.*, Trident Compl. ¶ 35, Trident does not plausibly allege either. Trident arguably alleges that it relied on Everlast's oral assurances in not terminating the License Agreement earlier than December 31, 2017. To the extent that Trident argues that, in reliance on those assurances, it "took no action to protect its rights" such as by filing a lawsuit to rescind the contract, that argument must fail. *See Physicians Mut. Ins. Co. v. Greystone Serv. Corp.*, No. 07-

---

[4] To the extent that Trident claims that Everlast breached the implied covenant by preventing the company from terminating the License Agreement earlier, its claim fails because, among other things, the License Agreement could not be terminated any earlier than December 31, 2017. License § 4.2. As unfavorable as the terms became for Trident, Everlast was under no obligation to release it from the agreement's terms. *See Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1057 (2d Cir. 1992) ("[E]ven after you have signed a contract, you are not obliged to become an altruist toward the other party and relax the terms if he gets into trouble in performing his side of the bargain.") (internal quotation marks omitted)).

CV-10490 (NRB), 2009 WL 855648 at *6 (S.D.N.Y. Mar. 25, 2009) (delaying legal action is not sufficient to plead reliance). And given the License Agreement's unambiguous prohibition on oral modifications, reliance on any purported oral assurances was unreasonable. *See, e.g.*, *Vill. On Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 532 (S.D.N.Y. 1996); *see also Bank Leumi Trust Co. v. D'Evori Int'l, Inc.*, 163 A.D.2d 26, 32 (N.Y. App. Div. 1990) ("[R]eliance is an essential element of [a fraud] claim or defense, and given the unambiguous terms of the loan agreement . . . any such reliance would not be justified. . . . The loan agreement expressly precludes reliance on any oral agreement to modify its terms."). On top of that, Trident cannot establish injury because earlier termination was impossible: Pursuant to the plain terms of the License Agreement, *any* valid early termination was effective only as of December 31, 2017. *See supra* note 4. Moreover, absent extraordinary circumstances not present here, a party cannot claim legal injury based on having to perform its contractual obligations. Accordingly, Trident's fraud and negligent misrepresentation claims must be and are dismissed.

4. **Declaratory Judgment**

Finally, Trident seeks a declaratory judgment that "Trident has no obligation to make any further payments of royalties to Everlast pursuant to Section 4.2 of the License Agreement." *See* Trident Compl. ¶ 43. The Declaratory Judgment Act permits a district court to exercise jurisdiction over a proposed declaratory judgment action only when an actual controversy exists. *See* 28 U.S.C. § 2201(a). To the extent that the Trident seeks a declaratory judgment based on the alleged oral agreement, the claim is moot given the Court's resolution of Trident's contract claim. *See, e.g.*, *Lifeguard Licensing Corp. v. Kozak*, 371 F. Supp. 3d 114, 123 (S.D.N.Y. 2019) ("[W]hen an actual controversy ceases to exist, there can be no claim under the Declaratory Judgment Act, and the court loses subject matter jurisdiction."); *see also Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 70 (2d Cir. 2001) ("If a claim has become moot prior to the entry of final judgment, the district

court generally should dismiss the claim for lack of jurisdiction."); *cf. Beach v. HSBC Bank USA, N.A.*, No. 17-CV-5153, 2018 WL 3996931 (WHP), at *7 (S.D.N.Y. Aug. 21, 2018) (dismissing claims for breach of contract and declaratory judgment as duplicative for arising from the same set of facts and providing for the same legal remedy). To the extent that Trident seeks a declaratory judgment with respect to the License Agreement itself, the claim is redundant (and, as discussed in the following section, without merit anyway). Accordingly, Trident's declaratory judgment claim is dismissed.

## C. Everlast's Motion for Judgment on the Pleadings

That leaves only Everlast's motion for judgment on the pleadings with respect to its contract claims against Trident and Manchester. Under New York law, a written contract must be interpreted according to the parties' intent, which is "derived from the plain meaning of the language employed in the agreements." *In re Lehman Bros. Inc.*, 478 B.R. 570, 586 (S.D.N.Y. 2012) (internal quotation marks omitted). When a contract is unambiguous — that is, when it has "a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion," *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016) (internal quotation marks omitted) — a court's sole task "is to give operative effect to the legal relations described." *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv., Ltd.*, No. 86-CV-1313 (RLC), 1987 WL 16967, at *2 (S.D.N.Y. Sept. 10, 1987) (internal quotation marks omitted). Here, the License Agreement unambiguously required Trident to make quarterly payments to Everlast and provided that, in the event of a default, Manchester would be liable as guarantor. License §§ 6.2-6.3, 7.3, Sch. 7. And it is undisputed that Everlast did not receive payments for all quarters through December 31, 2017 (although the precise amount that it may be owed appears to be in dispute). *See* Amended Compl. ¶ 50; Trident's Compl. ¶ 20; *see also* ECF No. 44 ("Defs.' Mem."), at 12-13. Accordingly, Everlast would appear to be entitled to judgment as a matter of law

with respect to its contract claims against Trident and Manchester, at least as to liability. *See, e.g.*, *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 532 (S.D.N.Y. 2013) (granting a Rule 12(c) motion with respect to liability where damages were contested).

Trident's and Manchester's sole argument to the contrary rests on the early termination provision of the License Agreement, Section 4.2, which provides that either party is "entitled to terminate this Agreement without liability to the other Party . . . by giving written notice." *See* Defs.' Mem. 7-11.[5] That language, they argue, means that "if a party exercises its early termination right it does so 'without liability,'" with "no limitation on the type or timing of the liability to which it applies." Defs.' Mem. 11. If Section 4.2 were the only relevant provision in the License Agreement, that argument might have some force. But it is not the only relevant provision. Section 6.5, for instance, provides in relevant part that, "[i]mmediately upon termination of this Agreement, *for whatever reason* . . . all sums due to Licensor shall become payable immediately." License § 6.5 (emphasis added). And Section 17.6, in turn, states that "[t]ermination of this Agreement shall not affect any of the Parties' accrued rights or Liabilities." Moreover, Section 17.7 makes clear that each of these provisions "remain[s] in full force and effect" after termination. Reading these provisions together, as the Court must, *see, e.g.*, *Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003), it is plain that "liability" in Section 4.2 does not refer to sums owed for the periods prior to termination; instead, it must be construed to mean penalties arising from the

---

[5]   In their Answer, Trident and Manchester recite in *pro forma* fashion a handful of other defenses, such as estoppel, prior material breach, fraud, waiver, and failure to mitigate. *See* ECF No. 36, at 11-12. Notably, however, they do not rely on any of these defenses in opposing Everlast's motion for judgment on the pleadings. Moreover, all of these defenses are based on Everlast's purported misrepresentations and oral agreement to modify the contract, which, as discussed, do not provide valid grounds to invalidate the License Agreement or relieve Trident and Manchester of liability. Thus, Trident and Manchester fail to "support these defenses with some factual allegations to make them plausible." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98-99 (2d Cir. 2019) (holding that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense").

termination itself or penalties and royalty payments postdating December 31, 2017. Otherwise, Sections 6.5 and 17.6 be superfluous.

The efforts by Trident and Manchester to reconcile their reading of Section 4.2 with these other provisions are unpersuasive. Invoking the general principle that, where there is an inconsistency between a general contractual provision and a more specific one the latter controls, Trident and Manchester contend that Section 4.2 "is a specific provision" that applies only in the case of early termination. Defs.' Mem. 7-9. "Section 4.2," they argue, "does *not* render Sections 6.5 and 17.6 a nullity; rather, Section 4.2 qualifies those general provisions by providing a different result when one specific termination mechanism is invoked." *Id.* at 8 (footnotes omitted). But that argument ignores the plain language of the other Sections cited above — most notably the phrase "for whatever reason" in Section 6.5. It also defies common sense. On Trident's and Manchester's reading of Section 4.2, they could have refused to pay any royalties between the effective date of the License Agreement and December 31, 2017 and, so long as Trident gave timely written notice of its intent to terminate (indeed, even if Trident gave notice one day after the contract went into effect), they would have owed Everlast nothing. Put simply, it would be absurd to conclude that the words "without liability" gave Trident a unilateral option to a royalty-free, exclusive license for almost four years. *See, e.g.*, *Greenwich Capital Fin. Prods., Inc. v. Negrin*, 903 N.Y.S.2d 346, 348 (N.Y. App. Div. 2010) ("[A] contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." (internal quotation marks omitted)).

In the final analysis, Trident and Manchester may well have struck a bad deal when they entered the License Agreement. But "the law provides no remedy for bad bargains willingly risked with wide-open eyes." *United States v. Hoffman*, 219 F. Supp. 895, 905 (E.D.N.Y. 1963). Accordingly, enforcing the plain language of the License Agreement, as it must, the Court

concludes that Everlast is entitled to judgment as to liability on its contract claims against Trident and Manchester.

## CONCLUSION

For the foregoing reasons, all three motions are granted. That is, SNPI-NV's motion to dismiss Everlast's contract claim is granted, and the contract claim against SNPI-NV is dismissed; and Everlast's motion for judgment on the pleadings is granted, both as to the claims in Trident's Complaint and as to liability with respect to its contract claims against Trident and Manchester, with the amount of damages to be determined.

Further, the Court declines to *sua sponte* grant Everlast and Trident leave to amend their dismissed claims. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 15-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015). The problems with the dismissed claims are substantive, so amendment would be futile. *See, e.g.*, *Maragh v. Roosevelt Island Operating Corp.*, No. 16-CV-7530 (JMF), 2018 WL 6573452, at *6 (S.D.N.Y. Dec. 13, 2018); *Croft v. AXA Equitable Life Ins. Co.*, No. 17-CV-9355 (JMF), 2018 WL 4007646, at *5 (S.D.N.Y. Aug. 22, 2018). In any event, neither party requests leave to amend or suggests that they are in possession of facts that would cure the problems with their claims. Finally, in Everlast's case, the Court granted leave to amend in response to SNPI-NV's first motion to dismiss and explicitly warned that Everlast would "not be given any further opportunity to amend the complaint to address issues raised by [SNPI-NV's] motion to dismiss." ECF No. 26.

Everlast, Trident, and Manchester — the parties to the remaining claims — shall appear for a conference on **March 17, 2020, at 3:30 p.m.** to discuss the next steps of this litigation, including the prospects for settlement and the need for discovery with respect to damages. To facilitate that

discussion, the parties shall confer and, no later than the Thursday before the conference, submit a joint letter, the contents of which are described in the Court's order scheduling the initial pretrial conference, as well as a proposed Civil Case Management Plan and Scheduling Order attached as an exhibit to the joint letter. *See* ECF No. 6.

The Clerk of Court is directed to terminate ECF Nos. 33 and 38, and to terminate IBML and SNPI-NV as parties.

SO ORDERED.

Dated: February 26, 2020
New York, New York

_____
JESSE M. FURMAN
United States District Judge